(108 So. 309)

No. 27406.

### STATE v. WOODVILLE.

(March 29, 1926. Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Attorney and client ☞58.**

Courts may disbar or suspend attorneys from practice of law for definite period because of professional misconduct.

**2. Attorney and client ☞53(2)—Evidence held to show professional misconduct of attorney in participating in scheme as detective to procure evidence in divorce case, and in testifying in case himself.**

In disbarment proceedings, evidence showing, among other things, that attorney participated in collusion and design to make up divorce case and procure evidence to justify such suit, and that he testified to facts discovered without withdrawing as attorney, *held* professional misconduct warranting suspension from practice.

**3. Attorney and client ☞46—Long and intimate friendship with client may palliate, but cannot justify, professional misconduct in divorce case.**

Long and intimate friendship with client may palliate, but cannot justify, professional misconduct in participating in a scheme to procure evidence in divorce case and testifying therein without withdrawing from case.

**4. Witnesses ☞67.**

Attorney may testify in behalf of his client as to matters legitimately coming to his knowledge.

**5. Attorney and client ☞32—Where duties to court and profession conflict with those attorney deems due client from friendship, he should abandon relation of attorney.**

Where duties which attorney owes to court and his profession conflict with duties which he deems owing to client from friendship and he desires to serve his client as a friend, he should abandon the relation of attorney.

Original proceeding by the State of Louisiana, on the relation of the Attorney General, to revoke the license of John Alonzo Woodville to practice law. Judgment of suspension.

Percy Saint, Atty. Gen., and W. H. Thompson, Asst. Atty. Gen. (Edwin T. Merrick, Philip S. Gidiere, and Edward Rightor, all of New Orleans, of counsel), for the State.

Delvaille H. Theard and John C. Davey, both of New Orleans, for defendant.

THOMPSON, J. This is an original proceeding in this court to recall the privilege and to revoke the license heretofore granted to the defendant John Alonzo Woodville to practice as an attorney and counselor at law in the courts of this state.

The suit is in the name of the state on relation of the Attorney General, assisted by members of the examining committee for admission to the bar appointed under rule 20 of this court.

The ground for disbarment is professional misconduct growing out of and in connection with the institution and prosecution of the suit for divorce of Mrs. Schwartz against her husband, Rolla Schwartz.

The petition alleges that the defendant entered in the nighttime the private residence of one Charles Brandt without his knowledge or consent and with whom he was not ac-

quainted, at which residence a private entertainment was in progress, and proceeded to a bedroom in said residence for the purpose of observing, without their prior knowledge or consent, the conduct of guests of the owner of said residence, one of them being the defendant in the contemplated divorce suit; all for the purpose of catching the said defendant (Schwartz) in the act of committing adultery and which, if committed, would serve as the ground for obtaining for his client a judgment of divorce against her husband, the said Woodville thus taking the part of a detective on behalf of his client.

That the said Woodville well knew at the time that the inevitable result of his action, if successful, would be to make himself a witness in fact to occurrences constituting a vitally important issue in said divorce suit, and would compel him in the observance of the rules of proper conduct and decency to withdraw as counsel in said cause, a course which he, the said Woodville, did not then or thereafter intend to pursue and did not in fact pursue.

That the defendant in said divorce suit prior to October 6, 1923, had not been acquainted with the person with whom the adultery was alleged to have been committed, nor had he attended entertainments at the residence of said Brandt.

That such acquaintance and such attendance were brought about by a detective acting on behalf of plaintiff for the purpose of affording opportunities for such offenses, and that the said Woodville knew, or by the exercise of reasonable prudence and inquiry should have known, these facts at the time of his visit to said residence on October 22, 1923; that he was fully advised in regard thereto before the time of giving his testimony, not only being put on his guard by proposals in his presence by plaintiff's detectives to initiate similar plans for the future, but also by the direct testimony of the plaintiff at the opening of the trial.

That nevertheless the said Woodville proceeded to testify as a witness on behalf of the plaintiff in said divorce case to an act of adultery which he claimed to have seen the defendant commit on the night of October 22, 1923, in spite of the fact that said knowledge had been procured by him by said improper entry; in spite of the fact that the commission of the act of adultery to which he testified, if committed, had been brought about by connivance on behalf of plaintiff in said divorce suit; and in spite of the fact that there was a very serious and direct conflict of testimony as to the alleged occurrence as to which he testified, placing directly at issue the veracity of all the witnesses, including himself.

We shall not attempt the painful and unpleasant task of quoting the evidence in detail which was introduced on the divorce trial and in this court, but shall content ourselves with merely stating what we conceive to be the material facts established by the evidence.

Mrs. Schwartz and her husband separated about the middle of September, 1923, the wife and her two children leaving the common dwelling and going to live with her mother. Shortly thereafter, she employed Mr. Woodville to secure a separation from bed and board and alimony for the support of herself and children.

The defendant addressed a letter to Schwartz and afterwards had an interview with him in person.

Nothing definite or satisfactory resulted from the letter or interview, and the proposed suit for separation seems to have been then abandoned.

At the time the defendant was employed as counsel, there existed no ground on which an immediate and final divorce could be obtained; at least, no such ground was communicated to the attorney. A cause of action for an absolute divorce had to be made up, and evidence had to be developed or pro-

cured in the future to establish such a cause of action.

Accordingly, plans looking to that end were inaugurated.

A brother of Mrs. Schwartz, a Mr. Tranchina, happened to be acquainted with a Miss Blanchard, who represented herself to be a detective and who was on intimate terms of friendship with Schwartz. Miss Blanchard and Tranchina were brought together, and in the course of a conversation Tranchina related to Miss Blanchard the marital disturbances between his sister and her husband.

After having discussed the matter, Miss Blanchard, according to her testimony, tendered her services as a detective to do what she could to get up evidence in the interest of Mrs. Schwartz to be used in a suit for divorce.

This engagement or promise on the part of Miss Blanchard was made just prior to October 6, 1923.

Another detective (Bishop) had also been engaged either by Mrs. Schwartz or her brother to secure evidence to serve as a basis for the divorce suit.

A party was arranged to take place at the residence of Mr. Brandt on Hawthorne street on the night of October 6th. Miss Blanchard was very well acquainted with Schwartz, who had visited her house frequently. She was also acquainted with Mrs. Daigle, the lady thereafter named as corespondent in the divorce suit.

Schwartz and Mrs. Daigle were brought together, introduced, and invited to attend this party of October 6th by Miss Blanchard, and they with Miss Blanchard and a number of other persons went out to the dance in the same automobile.

The detective Bishop also visited the Brandt residence on this occasion, but did not enter the house. He acted as a spy and made his observations from without the house.

161 LA.—5

In accordance with prior instructions, the two detectives made a written report to the defendant Woodville of the facts which they claimed to have observed at the party in relation to the alleged immoral conduct between Schwartz and Mrs. Daigle.

On receipt of this report, Woodville called in conference the two detectives and Mrs. Schwartz and discussed the matter with them at some length. He told Mrs. Schwartz that while the facts stated by the detectives were very material, it would not be advisable to file suit on the testimony of the two detectives, and that it would be necessary to get two disinterested witnesses to see what the detectives saw. Mrs. Schwartz then told Woodville that she did not know anybody she could get and did not know what to do. Thereupon Woodville told her that he would see what he could do.

Another party was arranged to take place at Brandt's about a week or ten days after the first party.

The same Miss Blanchard invited Schwartz and Mrs. Daigle to attend this party. Schwartz for some reason unexplained did not attend and no party was held.

On this occasion, however, the defendant Woodville, in company with Julius and Abe Wiener and a Mr. Weiss, visited the Brandt home. They found the place in darkness, and after waiting for a considerable length of time made their departure.

On the way to visit the house on the occasion just mentioned, Woodville told Weiss that the main reason for wanting the three parties to go with him was to watch the actions of one particular man who he had reason to believe was not behaving properly, and that he wanted responsible witnesses with him.

The witness Weiss, in referring to this visit, said that Woodville had phoned him that on a certain Saturday night he expected a party to be pulled, and that it would be

worth while seeing—that it would be interesting to see some one caught in this particular act and that it would be right funny. Weiss further testified that Woodville said when inviting him to go along:

"I think that little adventure is going over to-night, and if you want to be in at the killing come along and see it."

The "little adventure" having failed, another one was arranged to take place at the same residence on Monday night, October 22d.

Mrs. Daigle and Schwartz were again invited by Detective Blanchard to attend, and they did so in company with Miss Blanchard.

On this occasion the defendant and Julius Wiener drove out to the house where they found the party, as stated by them, in "full blast." They remained on the outside of the house for some little time observing the movements of the participants in the party, and more particularly that of Schwartz and Mrs. Daigle. They saw, as they say, what they expected to see; Mrs. Daigle and Schwartz in an adulterous attitude in the bedroom of the house. They immediately opened the door of the residence, and rushed through the ball room into the private bedroom, which as they claim was occupied only by the two alleged offenders.

The place was a private residence, and it does not appear that any similar entertainments had ever been had there prior to the one of October 6th.

It is undisputed that neither Mrs. Daigle nor Schwartz had ever attended any such party at the placed named, and neither of them had ever met the proprietor and occupant of the residence.

It is also undisputed that Mrs. Daigle and Schwartz were strangers to each other and had never met until brought together and introduced by Miss Blanchard on the eve of the first party.

On the second day after the last party,

the defendant Woodville prepared and filed the divorce suit based solely on the allegation that Schwartz had committed adultery with Mrs. Daigle on the two occasions of October 6th and 22d, and on the trial of the case Woodville testified in behalf of his client as to the facts which he claimed to have seen on the night of October 22d.

The foregoing is a fair statement of the material and substantial facts as disclosed by the record, and in our opinion fully sustains the charges of professional misconduct against the defendant.

There is no doubt that these several parties were arranged in anticipation of bringing the lady and Schwartz together and creating the opportunity for the commission of the act of adultery which was to be made the basis for the divorce and, as already stated, was in fact the sole ground alleged for the divorce.

Nor can there be any doubt but that the defendant attorney knew the purpose for which these entertainments were conceived and carried out, and he acquiesced therein.

In furtherance of the combination and common design, he gave his personal assistance in behalf of his client in procuring evidence to establish the act of adultery on which he could safely file a suit for divorce.

After telling his client that the facts which the detectives saw at the party of October 6th were not sufficient and after she had abandoned all hope from her personal efforts, Woodville told her that he would see what he could do. Following this statement, a second entertainment was conceived, to which he invited the three parties already named to attend with him, distinctly informing them the purpose of this party and the object of his attendance. The party having failed on account of the nonattendance of the principal actor, another one was planned, and he again invited one of his friends to accompany him, telling him of the "little ad-

venture" and that he would see just what they did see.

In view of this evidence, it is impossible to reconcile the statement of the defendant that his presence at the residence of Brandt on the two occasions stated was purely accidental and with no purpose of becoming a witness in the case. His going was for the very purpose of having some disinterested witnesses watch the movements of Schwartz and to catch him in an anticipated act of adultery, so that such witnesses could be used in addition to the testimony of the two detectives, and he was to be one of those witnesses.

[1, 2] That the defendant had full knowledge of what was being done and actually participated in the collusion and design to make up a case and to procure evidence to justify a suit for divorce, we entertain no doubt.

That such conduct was unprofessional, not in keeping with an orderly administration of justice, and calculated to bring the profession into disrepute, and to make a mockery of the judiciary, there ought to be no doubt.

Attorneys are officers of the court and are responsible to the court for professional misconduct in the course of their practice, and the authority of the courts to disbar or suspend from practice for a definite period has existed from time immemorial.

In the case of the State v. Fourchy, 31 So. 325, 106 La. 743, the court said:

"The generally accepted doctrine in England and in this country is that the power to disbar an attorney is possessed by, and is inherent in, all courts which have authority to admit attorneys to practice * * * and it has necessarily been left to the courts to determine what manner of case should be made out, in order to justify a judgment of that character."

And in the more recent case of State v. Flynn, 107 So. 314, 160 La. 483, we said in referring to the constitutional provision under which this suit is brought:

"The constitutional provision is not restrictive, but is declaratory, of the existence in this court of its power to disbar; and it may exercise this power, where, in a proper proceeding, any conduct of any attorney is shown to be such as to render him morally or professionally unfit to discharge the duties of his office."

[3] The defendant Woodville confesses that he committed a wrong and the only excuse he offers is that his client had been a lifelong friend, and that he had been on intimate terms of friendship with her family for a long series of years. This fact may serve to palliate to some extent his misconduct, but it cannot be accepted as a justification.

[4, 5] Where there is a conflict between the duties which an attorney deems to be due his client arising from friendship and the duties which he owes to the court and to the profession, and he desires to serve his client as a friend, he should abandon the relation of attorney. We do not mean by this that an attorney may not in any case be a witness on behalf of his client as to matters legitimately coming to his knowledge. In such a case neither the law nor professional ethics render an attorney incompetent as a witness on behalf of his client.

We cannot, however, give judicial approval to the conduct of an attorney who takes upon himself the responsibility of making up a case in behalf of his client and procuring the evidence by acting in the capacity of a detective or a spy, as was done in this case.

There is nothing in the record to indicate that the defendant has been guilty of any prior acts of misconduct in the practice of his profession. So far as the record discloses, he has enjoyed the good will and confidence of the bench and the bar.

We have every reason to believe from his assurances that the court will never be called upon again to consider a like proceeding concerning his professional conduct. From these considerations we have concluded not

to disbar the defendant, but to suspend him for a fixed period from the practice of law.

For the foregoing reasons it is ordered and decreed that the said John Alonzo Woodville be and is hereby suspended from the practice as attorney and counselor at law, and from appearing in the courts as such attorney and counselor at law, for a period of six months from the day this judgment becomes final.

It is further ordered that defendant pay all costs of this proceeding.

BRUNOT, J., takes no part.